## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CAMERON BLAKE,

   Petitioner,

v.

   Case No. 3:22-CV-02814-NJR

UNITED STATES OF AMERICA,

   Respondent.

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

 This matter is before the Court on Petitioner Cameron Blake's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). Blake contends that he received ineffective assistance from his trial counsel in violation of his Sixth Amendment rights, principally because his trial counsel did not file an appeal of his judgment. For the reasons set forth below, Blake's section 2255 motion is denied.

### BACKGROUND

 Blake was charged in August 2020 in an eight-count indictment with Hobbs Act robbery, *see* 18 U.S.C. § 1951 (Counts 1, 3, 5, and 7), and possessing a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 2, 4, 6, and 8). *See United States v. Blake*, No. 3:20-30123-NJR (S.D. Ill.), Doc. 1. The indictment alleged that Blake robbed several gas stations and a Domino's Pizza franchise in St. Clair County, Illinois.

Blake appeared before the Court for a change of plea hearing on April 6, 2021. He was represented by attorney David Brengle, then of the Federal Public Defender's office.[1] Blake was placed under oath and was warned that he could be charged with perjury if he lied, which he indicated that he understood. (Doc. 11-1 pp. 4, 7). The undersigned then asked Blake questions relevant to determining his competency and ability to understand the proceedings. Blake represented that he could read and write and denied that any of his mental health medications impaired his ability to think clearly. (*Id.* at pp. 8-9). Neither the Government nor Blake's counsel had concerns about his competency, and the Court found that he was capable of entering a knowing plea. (*Id.* at pp. 9-10).

The undersigned then explained to Blake the rights he was waiving by pleading guilty. (*Id.* at pp. 10-13). Blake affirmed that he wished to give up those rights by pleading guilty. (*Id.* at p. 13). Blake also confirmed that he was fully satisfied with Brengle's representation. (*Id.* at p. 14). And he confirmed the same in the plea agreement itself. (*Blake*, No. 3:20-30123-NJR (S.D. Ill.), Doc. 24 p. 13).

After the Government explained the elements of the charges, the undersigned reminded Blake of the penalties for the offenses, including the fact that the prison sentences on the § 924(c) charges must run consecutively. (Doc. 11-1 pp. 16-17). Blake affirmed that he understood those possible penalties. (*Id.*). The undersigned inquired of counsel why the parties had recommended a 21-year sentence, as the defendant was charged with four counts of violating § 924(c), each of which carried a seven-year

---

[1] The hearing took place via video conference in light of then-applicable CDC Guidelines related to social distancing. Blake consented to proceeding by video. (Doc. 11-1 p. 5).

mandatory minimum. (*Id.* at p. 23). The parties confirmed that the government had agreed to dismiss Count 8 — one of the § 924(c) charges — as part of the plea agreement. (*Id.*). Blake did not question that calculation.

The undersigned then addressed the voluntariness of Blake's plea. Blake denied that anyone had pressured or forced him to plead guilty. (*Id.* at p. 18). Blake confirmed that he had reviewed the plea agreement with his counsel before signing it. (*Id.* at p. 19). Blake also affirmed that he understood the sentencing guidelines were only advisory. (*Id.* at pp. 19, 23-24). The undersigned also explained that the plea agreement included a waiver of certain rights to seek review of his conviction that would restrict his ability "to seek modification of, or contest any aspect of the conviction, or sentence, in any type of proceeding." (*Id.* at p. 20). The waiver provided that Blake would forgo any right to bring a collateral attack to the constitutionality of the statutes to which he pleaded guilty or to later argue his conduct fell outside the statutes' scope. (*Blake*, *supra*, Doc. 24 pp. 9-10). However, Blake did not waive his right to argue on appeal or in a collateral proceeding that he had received ineffective assistance of counsel. (*Id.* at p. 10). Blake confirmed that he understood the waiver. (Doc. 11-1 pp. 20-21). Blake denied having any questions about the portion of his plea agreement stating that he was satisfied with his counsel's representation. (*Id.* at p. 21).

Blake confirmed that he had signed the factual stipulation accompanying the plea agreement after discussing it with his counsel. (*Id.* at p. 25). After the Government reviewed the factual stipulation on the record, Blake stated that he agreed with the facts as described and denied having any questions. (*Id.* at p. 28). Blake then affirmed that he

wished to plead guilty and was pleading guilty of his own free will. (*Id.* at p. 29). Finding Blake's guilty plea entered knowingly and voluntarily, the undersigned accepted his plea. (*Id.* at pp. 29-30).

Following Blake's guilty plea, the United States Probation Office prepared an initial presentence report ("PSR"). (*Blake*, *supra*, Doc. 28). The PSR recommended — and the parties agreed — to a base offense level of 25 and noted that Count 8 would be dismissed at sentencing. (*Id.* at p. 5). Blake's ultimate guideline range of 309 to 324 months imprisonment was driven, in large part, by the application of the consecutive mandatory minimums on Counts 2, 4, and 6. (*Id.* at p. 23). However, the parties recommended a sentence of 21 years imprisonment pursuant to the plea agreement. (*Id.* at p. 5).

On September 7, 2021, Blake appeared before the Court for sentencing. The proceeding was conducted via video due to the COVID-19 pandemic. (Doc. 11-2 pp. 2-4). Although Brengle was not physically present with Blake, the undersigned informed him that he could be placed in a private Zoom breakout room with his attorney should he find it necessary, and Blake consented to the arrangement. (*Id.* at p. 4).

Blake confirmed that he had reviewed the PSR with his attorney. (Doc. 11-2 pp. 7-8). The undersigned reviewed the calculation of the guidelines and reiterated specifically that Counts 2, 4, and 6 dictated a "mandatory seven years on each count that must run consecutive to all other counts." (*Id.* at p. 8). Blake did not express any concerns with the calculation. The Court ultimately sentenced Blake to a below-guidelines total of 252 months (21 years) of imprisonment, followed by three years of supervised release.

(*Blake*, *supra*, Doc. 38). The undersigned also reminded Blake of his right to appeal his conviction subject to the waiver provisions of his plea agreement.

> Now, Mr. Blake, you can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or if there was some other fundamental defect in the proceedings that was not waived by your guilty plea.

> In addition, under some circumstances a Defendant has a right to appeal the sentence; however, a Defendant may waive those rights as part of a plea agreement, and you have entered into a plea agreement which waives some or all of your rights to appeal the sentence itself. Such waivers are generally enforceable, but if you believe the waiver itself is not valid you can present that theory to the Court of Appeals. With few exceptions, any notice of appeal must be filed within 14 days of judgment being entered in your case or within 14 days of the Government filing a notice of appeal. I expect we will enter judgment later today, tomorrow at the latest. If you are unable to afford the services of a lawyer to handle your appeal, a lawyer will be appointed for you.

(Doc. 11-2 p. 27). Blake confirmed that he understood his appellate rights as explained by the Court. *Id.* No notice of appeal ever was filed.

On December 6, 2021, Blake filed a motion seeking access to certain discovery documents, transcripts, and the PSR in order "to proceed with [his] appeal." (Doc. 41). The Court mailed Blake a letter informing him how to access the transcripts and docket sheet but noted that it did not maintain discovery records and that the PSR could only be obtained through his counsel. (Doc. 44).

On September 12, 2022, Blake filed a motion seeking the appointment of counsel to assist him in filing a direct appeal. (Doc. 46). He stated that he had not heard from his attorney since sentencing despite sending "numerous letters concerning his appeal[] right." (*Id.* at p. 2). According to Blake, his attorney had "just recently" informed him that he did not file a notice of appeal. (*Id.*). Because the deadline for filing a notice of appeal

and the period within which the Court could extend the deadline had long passed, the Court denied Blake's request for counsel. (Doc. 47). However, the Court furnished Blake a blank section 2255 form in the event he "wishe[d] to file a § 2255 alleging ineffective assistance of counsel." (*Id.*).

On December 5, 2022, the Court received and docketed Blake's motion to vacate his conviction and sentence under section 2255. The document includes an attestation by Blake, signed under penalty of perjury, that he placed the document into the prison's mailing system on October 23, 2022, although he did not indicate when he had signed the document. (Doc. 1 p. 12). Blake attached to his motion a letter from Brengle dated November 22, 2021, sent in response to Blake's request for certain case documents. (*Id.* at p. 13). Brengle informed Blake that he had not appealed the judgment. (*Id.*). According to Blake, he attempted to contact Brengle regarding the appeal by letter on September 9, 2021, and he made numerous phone calls the following week. (*Id.* at p. 4) He also alleges that he spoke with Brengle about the appeal immediately after his sentencing "on September 9, 2021." (*Id.*). Brengle told Blake that he "would get it taken care of." (*Id.*).

Upon preliminary review, the Court ordered the Government to file a response. (Doc. 2). The Government attached to its response an affidavit from Brengle. (Doc. 11-6). Brengle "do[es] not believe" Blake asked him to file a notice of appeal at the sentencing hearing. (*Id.* at p. 3). He cited several factors in support of his belief:

- If Blake had asked, he would have requested the United States Marshals Service place Blake in a holding cell so that he could advise him against an appeal, since it might breach the plea agreement;

- According to the Federal Public Defender's timekeeping records, which Brengle reviewed in preparing the affidavit, the time he spent on Blake's sentencing was characteristic of a short, uncontested proceeding. Brengle believes he would have logged additional time associated with advising Blake against an appeal had Blake asked him to file one.

- He would not have used the words "I will get it taken care of" in response to Blake's request;

- If Blake had persisted in seeking an appeal, he would have noted it on his timekeeping records; and,

- It is his standard practice to file a notice of appeal when asked to do so by a client.

(*Id.* at pp. 3-5). Brengle further states that he did not hear from Blake until he received his November 2021 letter. (*Id.* at p. 6).

## LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides a federal prisoner with a post-conviction remedy to test the legality of their detention "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, it "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

DISCUSSION

Blake contends that he is entitled to relief because his trial counsel was ineffective in several respects. First, he alleges that Brengle failed to file a timely notice of appeal despite his express request. Second, he faults Brengle for failing to object to the additional consecutive sentences on Counts 4 and 6, which he says violated his Fifth and Sixth Amendment rights. Finally, he alleges Brengle coerced him to pleading guilty by assuring him the Government would drop Counts 3 through 8 in exchange for pleading guilty to Counts 1 and 2.

*A. Timeliness*

To start, the Government argues that Blake's motion is untimely. A motion for relief under 28 U.S.C. § 2255 is subject to a one-year limitations period, which runs from the latest of four possible dates:

(1)    the date on which the judgment of conviction becomes final;

(2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)    The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In a typical case, the limitations period will begin to run under subsection (f)(1) of § 2255, the date on which the challenged conviction becomes "final." *Id.* § 2255(f)(1).

Where a defendant does not seek direct review, as here, finality coincides with the expiration of the deadline to file a notice of appeal, *see Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013), generally 14 days after the entry of judgment, Fed. R. App. P. 4(b)(1)(A)(i). Here, Blake's conviction became final for purposes of 28 U.S.C. § 2255(f)(1) on September 21, 2021. The limitations period would thus have expired one year later — on September 21, 2022. Blake concedes he did not file his motion within that period.

He argues that his motion should, nevertheless, be considered timely because he believed that the Court had construed his motion for the appointment of counsel (*Blake, supra*, Doc. 46) as a timely § 2255 motion. (Doc. 1 p. 11). The Government responds that the Court was obligated to give notice to Blake if it was construing his motion as a § 2255 motion. Because the Court did not so here and merely offered Blake a blank § 2255 motion, there is no basis to toll the statute of limitations. The Government also notes that Blake offers no justification for failing to file his motion until December 5, 2022 — nearly three months after the deadline.

But these arguments focus on the Court's power to toll the deadline in appropriate cases and depend on a threshold assumption that Blake's filing was late. There is reason to think it was not. Blake's core claim, after all, is that his attorney failed to properly communicate with him about his appeal. The situation calls to the fore subsection (f)(4). Under that theory, Blake's one-year filing deadline would have begun "[t]he date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). The Government concedes that section (f)(4) deadline may be applicable but posits it does not apply here because

Blake knew of his attorney's failure to file a notice of appeal "as early as November 2021," when he received the letter from Brengle informing him that no appeal had been filed. (Doc. 11 p. 14).

The Government's reasoning misses a critical fact. Blake declared under penalty of perjury that he placed the filing in the prison mailing system *on October 23, 2022*, well within one year of the November 2021 date. (Doc. 1 p. 12).

Rule 3(d) of the Rules Governing Section 2255 Proceedings states that "[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing." The Seventh Circuit likewise has emphasized that "for statute of limitations purposes, a petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk." *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999). To invoke the protection of this so-called Prison Mailbox rule, a prisoner must either submit a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement "either of which must set forth the date of deposit and state that first-class postage has been prepaid." Rule 3(d) of the Rules Governing Section 2255 Proceedings.

The Court is satisfied that Blake meets these requirements in substance, if not in form. As mentioned, he declared under penalty of perjury in his motion that he placed it in the prison mailing system on October 23, 2022. (Doc. 1 p. 12). Although the declaration does not mention that first-class postage was prepaid, the envelope filed with the motion clearly bears a stamp, indicating that Blake paid for postage.[2] The Court is satisfied that

---

[2] The Seventh Circuit has looked to extrinsic evidence to satisfy the Rule's requirement regarding

Blake should benefit from the Prison Mailbox rule and therefore timely filed his motion under § 2255.[3]

*B. Merits*

i.

Having concluded that Blake's petition is timely, the Court turns to the merits. Blake first alleges that his trial counsel rendered constitutionally inadequate assistance when he failed to file an appeal, despite his express request.

The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. amend. VI. And "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Ordinarily, to prevail on an ineffective assistance claim, a petitioner is required to "meet the familiar two-part standard set forth in *Strickland*." *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The petitioner must show that his counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness'" and his counsel's deficient performance prejudiced him. *Id.* at 532 (quoting *Strickland*, 466 U.S. at 688).

---

postage. *See Murray v. Artl*, 189 F. App'x 501, 503 (7th Cir. 2006). In any event, the Seventh Circuit has suggested that the declaration component of the Rule does not apply where a prisoner attests that he used a prison's legal mail system, as Blake did here. *See Ingram v. Jones*, 507 F.3d 640, 644 (7th Cir. 2007), *as amended* (Dec. 7, 2007) (construing a prior version of Fed. R. App. P. 4(c), which mirrored the current version of Rule 3(d) of the 2255 Rules, and holding that a prisoner who used a legal mail system need not submit a declaration regarding the date of deposit and postage).

[3] To be sure, it is somewhat odd that it took more than a month for Blake's motion to reach the Court. COVID-related mailing delays are one possible explanation, but the worst of the pandemic had already passed by late 2022. The concern is immaterial in light of the Court's conclusion that Blake's claims fail on the merits.

However, it is well-settled that the failure of a lawyer to comply with a defendant's request to file a direct appeal "is per se ineffective assistance of counsel," and a petitioner need not show prejudice in order to prevail on the ineffectiveness claim. *Gant v. United States,* 627 F.3d 677, 681 (7th Cir. 2010). "When a defendant in a criminal case specifically instructs a lawyer to file a notice of appeal, the lawyer's failure to do so deprives the defendant of the Sixth Amendment right to counsel, regardless of whether an appeal was likely to succeed." *Ryan v. United States*, 657 F.3d 604, 606 (7th Cir. 2011); *see also Roe v. Flores–Ortega,* 528 U.S. 470, 484 (2000); *Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir. 1994) ("[F]ailure to take an appeal, despite the defendant's request, is ineffective assistance without regard to the probability of success on appeal."). If a court concludes that a defendant should prevail, it must enter a new judgment in the underlying criminal case to permit the defendant to take an appeal. *United States v. Bell*, 826 F.3d 378, 380 (7th Cir. 2016).

The Government rightly concedes these principles but argues that Blake's allegation that he directed Brengle to file an appeal is wholly unsubstantiated, particularly when compared to the detailed affidavit of Brengle, so no hearing is necessary to resolve the claim.

It is true that "[a] district court need not grant an evidentiary hearing in all § 2255 cases." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001); *accord Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002). For example, a hearing is not required when "the files and records of the case conclusively show that the prisoner is entitled to no relief." *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) (quoting 28 U.S.C.

§ 2255(b)). A hearing is also not necessary if the petitioner's allegations are "palpably incredible" or "inherently unreliable." *Bruce*, 256 F.3d at 597 (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)); *Barker v. United States*, 7 F.3d 629, 636 n.3 (7th Cir. 1993) (quoting *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992)). A hearing must be granted, however, if the petitioner "alleges facts that, if true, would entitle him to relief." *Lafuente*, 617 F.3d at 946. And the Seventh Circuit has counseled that a "petitioner's burden for receiving an evidentiary hearing is relatively light." *Torres–Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016). Thus, the question for the Court is whether the facts supporting Blake's allegation of ineffective assistance, as set forth in his motion, constitute sufficient evidence to make his allegation plausible and to warrant further inquiry by the Court. *Ryan*, 657 F.3d at 606; *Lafuente*, 617 F.3d at 946; *Mahaffey v. Ramos*, 588 F.3d 1142, 1144 (7th Cir. 2009).

The Government observes that Blake did not furnish an affidavit in support of his version of events, but it also acknowledges that Blake signed his petition under penalty of perjury, which obviates the need for a separate affidavit. *Cf. Kafo v. United States*, 467 F.3d 1063, 1070 (7th Cir. 2006) (concluding that a petitioner's statements under oath in their filing would "have constituted at least some evidence of his allegations with respect to his counsel's alleged failure to file a direct appeal after being requested to do so."). Even so, the Government argues a hearing is not necessary because Blake "presented general claims with no additional support," while Brengle "presented a detailed affidavit in support of his belief that Blake DID NOT ask him to appeal his sentence." (Doc. 11 p. 25).

To the extent the Government argues that Blake's allegations are too generalized, the Court disagrees. The allegations are reasonably specific and phrased with certainty: he avers that Brengle asked him at the conclusion of the sentencing hearing whether he wanted to appeal and whether he wanted Brengle to represent him in the appeal. (*Id.*). Blake says he was "sitting next to" Brengle "in the court room" when this conversation occurred. (*Id.*) When Blake responded that he did wish to appeal, Brengle responded that he "would get it taken care of." (*Id.*). Blake also says that he later attempted to contact counsel "via letter" and also "by phone" the week of September 13, 2021, to "inform[] [him] that [he] wished to appeal [his] sentence." (*Id.*). These allegations are sufficiently "detailed and specific." *Kafo*, 467 F.3d at 1067.

But two issues are of concern to the Court. First, Blake claims that his conversation with Brengle regarding the appeal occurred "while sitting next to" him "in the court room" during the sentencing hearing. (Doc. 1 p. 4). As the Government points out, this allegation is somewhat inconsistent with Blake's statement, one sentence prior, that he attempted to call Brengle the following week to instruct him to file an appeal. It is odd that Blake would feel the need to call Brengle regarding the appeal if he had already spoken with him about it in person at the sentencing hearing.

Were this the only point of concern, the Court might have concluded a hearing was necessary to permit Blake to explain. But there is a more fundamental problem with Blake's story. Blake insists that he instructed Brengle to file an appeal "at the table" — presumably the counsel table — and that he was seated next to him in the courtroom. (*Id.*). He is very clear on these points. Yet Blake *was not present in person* at his sentencing

hearing; it took place virtually. (Doc. 11-2 p. 4). Obviously, the interaction could not have taken place as Blake describes in his motion. Given the patent contradiction between the record and Blake's version of events and considering Brengle's own affidavit, the Court concludes that Blake's claim that he instructed Brengle to file an appeal is "palpably incredible." *Machibroda*, 368 U.S. at 495. In sum, the inconsistencies in Blake's story and its incompatibility with undisputed evidence make his allegation that he instructed Brengle to file a notice of appeal unbelievable and inherently unreliable. *Cf. Brown v. United States*, No. 13-1166-NJR, 2017 WL 930607, at *6 (S.D. Ill. Mar. 9, 2017). This finding obviates the need for a full evidentiary hearing or any further investigation by the Court and also means that this ineffective assistance claim can be summarily denied. *See Gant v. United States,* 627 F.3d 677, 681 (7th Cir. 2010) (explaining that for a defendant to succeed on a claim that he asked his attorney to pursue a direct appeal and the attorney did not do so, "a defendant must show that he actually requested his attorney file an appeal."); *Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir. 1994) ("'Request' is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue.").

ii.

Blake also claims Brengle rendered ineffective assistance by failing to object to the consecutive 84-month sentences on Counts 4 and 6 of the indictment. He alleges that Brengle advised him that the Government would dismiss Counts 3 through 8 if he pleaded guilty to Counts 1 and 2. Blake claims that "no human in [their] right mind would

plea[d] to 7 counts of an 8 count indictment." (Doc. 1. p. 5). In his affidavit, Brengle denies telling Blake that Counts 3 through 8 would be dismissed. (Doc. 11-1 p. 2).

"[T]he Sixth Amendment right to effective assistance of counsel extends to assistance rendered when deciding whether to reject a plea offer." *Almonacid*, 476 F.3d at 521. But in light of the waiver provisions contained in Blake's plea agreement, he must do more than "assert that a constitutional violation preceded his decision to plead guilty or that his trial counsel was ineffective for failing to raise the constitutional claim. *Hurlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013). "[H]e must allege that the plea agreement was the product of ineffective assistance of counsel or tainted by ineffective assistance of counsel." *Id.* at 967 (citations omitted). In the plea context, "we do not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea bargain." *Lee v. United States*, 582 U.S. 357, 364 (2017) (internal quotation marks omitted). Instead, we consider whether the defendant has demonstrated a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 364-65 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Blake says his counsel should have objected to the imposition of the consecutive sentences on Counts 4 and 6 as violating his Fifth and Sixth Amendment rights. He does not fully explain the legal basis for such an objection. If his claim is that consecutive mandatory minimum sentences violate his rights under the Due Process Clause, that position has been rejected. *See, e.g.*, *United States v. Franklin*, 547 F.3d 726, 735 (7th Cir. 2008); *United States v. Velasco*, 953 F.2d 1467, 1476 (7th Cir. 1992).

Construed liberally, Blake appears to suggest he would not have pleaded guilty had Brengle properly advised him he would be sentenced on Counts 1 through 7 and not Counts 1 and 2 only. The Court is perplexed by this claim. During the plea hearing, the Court explained to Blake the penalties for the offenses of which he was pleading guilty, including the fact that the prison sentences on the § 924(c) charges must run consecutively. (Doc. 11-1 pp. 16-17). As part of the plea, Blake agreed to plead guilty to all of the charges, and Blake, who was under oath, affirmed that he understood the possible penalties. (*Id.*). And Blake should have been disabused of any misunderstanding when the undersigned inquired of counsel why the parties *recommended* a 21-year sentence, as the defendant was charged with four counts of violating § 924(c), each of which carried a seven-year mandatory minimum. (*Id.* at p. 23). The parties confirmed that the Government had agreed to dismiss Count 8 — one of the § 924(c) charges — as part of the plea agreement. (*Id.*). No mention was made of an agreement to dismiss any other charges. Nor is there any indication of such an agreement in the written plea agreement, which Blake admitted he read. (*Id.* at p. 19). Blake never expressed any confusion about the terms of his plea, nor did he speak up during his sentencing hearing when the Court reiterated the terms of the parties' agreement and sentenced him on Counts 1 through 7. (Doc. 11-2 p. 19).

The Court finds it unlikely that Blake was in any way misinformed about the nature of his plea. Blake confirmed under oath that he read the agreement and understood it, and such statements are presumed to be true. *United States v. Smith*, 989 F.3d 575, 582 (7th Cir. 2021); *United States v. Purnell*, 701 F.3d 1186, 1190–91 (7th Cir.

2012). Blake does not allege that Brengle coerced him to pleading guilty. He also specifically denied that anyone threatened or coerced him to pleading guilty. (Doc. 11-1 p. 18). And the Court's own explanation of the possible consequences of his plea ameliorates any prejudice in the unlikely scenario in which Blake was misadvised. *See Thompson v. United States*, 732 F.3d 826, 830 (7th Cir. 2013). Because Blake makes no attempt to explain the contradiction between his sworn statements to the Court at the plea colloquy and the arguments he makes in his current § 2255 petition, there is no basis "to override the verity that presumptively attaches to a defendant's statements when entering a guilty plea." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (citing *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2010)). Blake has not established that he received ineffective assistance on this ground either.

## CONCLUSION

None of Blake's claims have merit. For the reasons stated above, his motion to vacate, set aside, or correct his sentence (Doc. 1) pursuant to 28 U.S.C. § 2255 is **DENIED**. This civil action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires district courts to consider whether to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, a petitioner "must have a constitutional

claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)) (emphasis omitted).

Here, reasonable jurists would not debate that Blake's ineffective assistance claims are meritless. Accordingly, a certificate of appealability is denied.

NOTICE OF APPELLATE RIGHTS

If Blake wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request the undersigned to reconsider the Order before going to the Seventh Circuit. If Blake chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned Chief District Judge has already declined to issue a certificate of appealability. So, Blake must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). He must also file a notice of appeal within 30 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Blake files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Blake cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Blake plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Blake wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P.

4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Blake showing excusable neglect or good cause.

**IT IS SO ORDERED.**

**DATED:   December 30, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**